# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

KAREN MARIE ISAACSON,

    Plaintiff,

v.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT,

    Defendant.

Case No. C17-1449RSL

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

    This matter comes before the Court on defendant's "Motion to Dismiss" pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. # 18. Plaintiff Karen Marie Isaacson alleges that the U.S. Secretary of Housing and Urban Development (the "Secretary") violated her constitutional rights to due process, equal protection under the law, and freedom of contract. See Dkt. # 5. Defendant moves to dismiss on the basis that plaintiff both lacks standing and fails to state a claim upon which relief can be granted. The Court has considered the memoranda and evidence submitted by the parties, and the remainder of the record.[1] For the following reasons, defendant's motion is GRANTED.

---

[1] The Court determines that the motion can be decided on the papers submitted. Plaintiff's request for oral argument is DENIED.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 1

# I. BACKGROUND

In May 2016, plaintiff contacted a loan officer at Guild Mortgage seeking advice about obtaining a home equity conversion mortgage (also known as a "reverse mortgage") for her manufactured home. Dkt. # 5 ¶ 3.04. After plaintiff mentioned that she had recently purchased the previously owned home and relocated it to her property, the loan officer allegedly told plaintiff that "HUD has a rule that if you move your house you can't get a reverse mortgage." ¶ 3.05. The HUD rule to which the loan officer was referring appears in the HUD Handbook, HUD Handbook 4235.1 REV-1 § 3–4, (the "Rule") as well as in the Code of Federal Regulations, 24 C.F.R. § 203.43f, (the "Regulation"). Both the Rule and the Regulation prevent HUD from insuring a reverse mortgage for a manufactured home if the home has been moved from the location where it was originally installed. Id. Plaintiff later received, via email from the loan officer, a copy of the HUD Handbook page on which the Rule was printed. Dkt. # 5 ¶ 3.07.

Section 225 of the National Housing Act ("NHA"), authorizes HUD to extend optional insurance to lenders of qualifying reverse mortgages "to meet the special needs of elderly home owners" and "increase the involvement of mortgagees and participants in the mortgage markets." 12 U.S.C. § 1715z-20(a). As a result, HUD does not contract directly with home owners but rather with authorized lenders to provide insurance on loans to members of the public. Id. § 1715z-20(c).

The NHA further states that:

> The Secretary may, upon application by a mortgagee, insure any home equity conversion mortgage eligible for insurance under this section and, *upon such terms and conditions as the Secretary may prescribe*, make commitments for the insurance of such mortgages prior to the date of their execution or disbursement *to the extent that the Secretary determines such mortgages* (1) have promise for improving the financial situation or otherwise meeting the special needs of elderly homeowners; (2) *will include appropriate safeguards for mortgagors to offset the special risks of such mortgages*; and (3) *have a potential for acceptance in the mortgage market*.

Id. § 1715z-20(c) (emphasis added). Accordingly, the Secretary may impose conditions upon HUD insurance. He is also bound to issue reverse mortgage insurance only to the extent that he

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 2

determines such a mortgage will both include protections that insulate homeowners from certain risks and potentially be accepted by a lender in the mortgage market. See id.

After receiving a copy of the Rule, plaintiff contacted HUD inquiring whether an exception might be made in her case. Dkt. # 5 ¶ 3.09. When HUD notified her that no such exception would be made, "[p]laintiff realized she would have no alternative but to sue HUD." Id. ¶¶ 3.11–3.12. At no time did plaintiff submit an application to HUD for insurance or to Guild Mortgage (or any other lender) for a reverse mortgage.

Plaintiff filed this lawsuit in September 2017. Dkt. ## 1, 5. The Secretary then filed a motion to dismiss, which asserts plaintiff lacks standing and fails to state a claim. Dkt. # 18.

## II. DISCUSSION

The Federal Rules of Civil Procedure state that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). In order for a federal court to have subject-matter jurisdiction over a claim, the plaintiff must have standing under Article III of the Constitution to challenge an alleged wrong in federal court. Warth v. Seldin, 422 U.S. 490, 498 (1975).

### A. Standing

To establish standing, a plaintiff must show that (1) she suffered an injury in fact; (2) that a causal connection exists between the injury and the defendant's conduct; and (3) that it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). At the pleading stage, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. Though the Court treats pleading-stage factual allegations as true, plaintiff must allege facts that give rise to a plausible inference that plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570–72 (2007).

The Court concludes that plaintiff's pleadings and briefing fail to establish Article III standing, because she has failed to identify an injury-in-fact that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 149 (2010).

1    First, she fails to identify "an invasion of a legally protected interest which is . . . concrete
2    and particularized and . . . actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S.
3    at 560 (marks and citations omitted). Plaintiff asserts that the Rule produces an injury in fact by
4    "interfering with borrowers' expected economic benefits and restricting access to FHA
5    mortgages." Dkt. # 21 at 5. Plaintiff further alleges that she has suffered financially, physically,
6    and emotionally because of the Rule. Id. None of these assertions establishes that plaintiff has
7    suffered a legally cognizable injury in fact. Plaintiff makes no allegation that she applied for
8    HUD insurance or for a reverse mortgage. Because plaintiff made no attempt whatever to
9    exercise her freedom to contract with a lender, any financial, physical, or emotional strain
10   experienced by her stems from a vague expectation of an undefined future benefit[2] rather than a
11   concrete, particularized, actual, or imminent harm. Therefore, plaintiff has not sufficiently
12   alleged an injury in fact as required to establish standing under Article III. See Lujan, 504 U.S.
13   at 560.

14   Second, plaintiff also fails to identify an injury that is "fairly ... trace[able] to the
15   challenged action of the defendant, and not ... th[e] result [of] the independent action of some
16   third party not before the court." Lujan, 504 U.S., at 560 (quoting Simon v. Eastern Ky. Welfare
17   Rights Organization, 426 U.S. 26, 41–42 (1976)). Even if plaintiff were able to show an injury
18   in fact originating from an inability to secure a mortgage, it would not be attributable to HUD
19   but instead to the specific mortgagee that refused to grant her a loan. Plaintiff argues that
20   because lenders follow the HUD Handbook, she is *de facto* barred from securing a reverse
21   mortgage and, thus, the Secretary is solely to blame for her situation. Dkt. # 21 at 5–6. She
22   contends that the Rule denies her access to the reverse mortgage market just as if the HUD were
23   physically blocking her right of entry to a retail store. Id. However, plaintiff's analogy misses

---

[2] Plaintiff refers to "expected economic benefit" multiple times in her response to defendant's motion to dismiss, Dkt. # 21 at 4, 8–9, and while there is some authority suggesting that loss of future benefit may be a legally cognizable injury sufficient for standing, see N.A.A.C.P., Boston Chapter v. Harris, 607 F.2d 514, 524–526 (1st Cir. 1979), Solon v. Gary Community School Corp., 180 F.3d 844, 849–851 (7th Cir. 1999), plaintiff does not plausibly allege an economic benefit that she would receive but for HUD's mortgage-insurance rule.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 4

the mark in its failure to illustrate that mortgagees are not legally bound to refuse a loan to someone without HUD insurance. The fact that plaintiff's home is "plainly under the requirements in the HUD Handbook" only bears on her ability to secure insurance through HUD, and does not prevent her from contracting with a willing, qualified lender. Because her ability to obtain a reverse mortgage depends on the choices of unrelated third parties, plaintiff does not allege an injury causally linked to defendant's actions. Lujan, 504 U.S. at 561.

For similar reasons, plaintiff also fails to identify an injury for which the Court possesses the "power to right or to prevent." Gonzales v. Gorsuch, 688 F.2d 1263, 1267 (9th Cir. 1982). Where, as in this case, redressability of plaintiff's alleged injury depends on the "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," the plaintiff bears a heightened burden to allege facts which show that the third party will respond to the Court's ruling and rectify the purported harm. Lujan, 504 U.S., at 562. Plaintiff has not satisfied this burden because even were the Court to void the HUD rule in question, plaintiff fails to allege how that would lead a qualified lender to choose to grant her a reverse mortgage. Plaintiff does not identify how a favorable ruling would be likely to redress her hypothetical mortgage-related injury.[3] Lujan, 504 U.S. at 561.

**B.     Leave to Amend**

A *pro se* litigant must be given leave to amend his or her complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Here, plaintiff has not yet applied for and been denied a reverse mortgage. She therefore has not identified a cognizable harm necessary for Article III standing, and the Court accordingly lacks subject-matter jurisdiction over her suit. Nothing before the Court suggests that an amendment to plaintiff's complaint would cure this deficiency. Furthermore, the case before the Court

---

[3]     Because the Court concludes that plaintiff lacks standing and that the Court accordingly lacks jurisdiction to decide her case, the Court need not reach the question of whether she has stated a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS - 5

constitutes plaintiff's second bite at the apple. Plaintiff previously filed a claim nearly identical to the one now before the Court which was also dismissed for lack of subject matter jurisdiction. See Isaacson v. Sec'y of Hous. & Urban Dev., No. C16-1254JLR, 2017 WL 1364559 (W.D. Wash. Apr. 14, 2017). Therefore, plaintiff has already been given an opportunity to revise her previously dismissed complaint. Accordingly, the Court declines to grant plaintiff leave to amend.

### III. CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss, Dkt. # 18, is GRANTED. Plaintiff's complaint is DISMISSED without prejudice and without leave to amend.

Dated this 22nd day of June, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge